IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:22-MC-31

IN RE:       JOHN DAVID MATHENY, II, ATTORNEY

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

On December 12, 2022, the Court initiated disciplinary proceedings against attorney John David Matheny, II, based on his conduct as counsel of record in *Williams, et al. v. The Estates, LLC, et al.*, No. 19-CV-1076. The Court gave Mr. Matheny an opportunity to show that he had not repeatedly violated the Local Rules and his ethical and professional responsibilities and to address appropriate discipline.

Mr. Matheny acknowledges his failure to take responsibility for the course of the litigation, his failure to communicate with his clients, and his failure to alert the Court when motions and briefs were filed with his signature but without his explicit consent.

Upon consideration of the matters of record in *Williams* and this case, the explanations offered by Mr. Matheny for his actions, and the arguments and representations of counsel for Mr. Matheny, the Court finds by clear and convincing evidence that Mr. Matheny repeatedly violated Local Rule 83.1(d)(2) and violated North Carolina Rules of Professional Conduct 1.1, 1.3, 1.4, 2.1, 3.1, 3.2, 3.5, and 8.4. Disciplinary action is appropriate. The Court will prohibit Mr. Matheny from associating with specially appearing attorneys under Local Rule 83.1(d) and from initiating litigation in this district for a minimum of five years and will order him to complete continuing

legal education courses before he can do so at the expiration of five years. In its discretion, the Court declines to find a violation of 28 U.S.C. § 1927.

## I.      Procedural History

Based on its familiarity with the proceedings in *Williams, et al. v. The Estates, LLC, et al.*, No. 19-CV-1076 [hereinafter *Williams*], the Court issued a Show Cause Order to Mr. Matheny describing conduct of record that tended to show he was not meeting his ethical and professional responsibilities. Doc. 1.[1] Specifically, the Court asked Mr. Matheny to show cause why he should not be sanctioned for violating North Carolina Rules of Professional Conduct 1.1, 1.3, 1.4(a), 2.1, 3.1, 3.2, 3.5(a)(4)(B)–(C), and 8.4(a), and Local Rule 83.1(d)(2), and for unreasonably and vexatiously multiplying the proceedings in violation of 28 U.S.C. § 1927. *Id.* The Court initiated these disciplinary proceedings under Local Rule 83.10e and in the Court's inherent authority. *See In re Evans*, 801 F.2d 703, 706 (4th Cir. 1986).

Mr. Matheny, through counsel, submitted a response to the Show Cause Order accepting the authority of the Court to impose discipline and acknowledging significant professional errors. *See* Docs. 7, 7-1, 8. Through counsel, Mr. Matheny offered additional context for his actions. He also proposed certain sanctions if the Court did find a violation: a five-year bar on appearing as local counsel in this district, a five-year bar on initiating actions in this district, and/or a monetary sanction. Doc. 8 at 18.

---

[1] This Order will cite to materials on the docket in this case with a simple docket cite. All citations to materials on the *Williams* docket, No. 19-CV-1076, will refer to that case by name.

The Court held a hearing on March 6, 2023, at which Mr. Matheny was given an opportunity to contest the matters in the Show Cause Order and otherwise to be heard. Mr. Matheny appeared with counsel, James Dedman, IV. Kelley Deangelus, counsel for the North Carolina State Bar, was present but did not ask to be heard. Also in attendance were counsel for the plaintiffs in *Williams*, James White and Dhamian Blue.

## II.     Findings of Fact and Conclusions of Law

The Court makes these findings of fact by clear and convincing evidence. *See In re Liotti*, 667 F.3d 419, 426 (4th Cir. 2011) (requiring attorney misconduct to be proven by clear and convincing evidence). The Court has considered the entirety of the record in the present case and the record in *Williams*.

Mr. Matheny graduated from the Charlotte School of Law in 2015, Doc. 7 at ¶ 3, and was admitted to practice law in North Carolina in August of that year. *Id.* at ¶ 4. His North Carolina State Bar number is 49387. Doc. 6-1 at ¶ 5. He practiced with a firm handling real estate closings for about three and a half years, Doc. 7 at ¶¶ 5–6, and he has practiced law by himself since September 2020. *Id.* at ¶¶ 6–8. He is a member of the bar of the United States District Court for the Middle District of North Carolina. *Id.* at ¶ 12.

He initially entered an appearance in *Williams* on behalf of defendant The Estates Real Estate Group, LLC, on September 9, 2020. *Williams* Doc. 74. As counsel of record, Mr. Matheny received and receives automatic notice of all filings on the court docket and has access to those filings.[2]

---

[2] Mr. Matheny has recently filed a motion to withdraw from representing the defendants in the *Williams* case. *Williams* Doc. 392.

3

On January 11, 2021, Mr. Matheny purported to enter what he called a "special appearance" for all named defendants, identifying himself as the "sponsoring attorney" for the special appearance of Steven W. Shaw as "collective counsel" for all named defendants. *Williams* Doc. 117. As an attorney employed in association with a specially appearing attorney, Mr. Matheny had responsibilities to the Court under the Local Rules. LR 83.1(d)(2). Specifically, he was responsible "for the conduct of the litigation" and was required to "review and sign all pleadings and papers, except for certificates of service." *Id.*

Mr. Matheny entered a general appearance on behalf of the defendants, including Craig Brooksby, on January 28, 2021. *Williams* Doc. 126; *see also Williams* Doc. 134. For a time, another attorney also represented some of the defendants. *See Williams* Docket Entry 12/10/2021 (adding David J. Martin as an attorney for some of the defendants); *Williams* Doc. 254 (Mr. Martin's post-trial motion to withdraw); *Williams* Doc. 258 (Order granting Mr. Martin's post-trial motion to withdraw). After the trial, other attorneys entered appearances on behalf of a small number of the defendants, taking the places of Mr. Shaw and Mr. Matheny as to those defendants. *See, e.g., Williams* Docs. 276, 295. The Court revoked Mr. Shaw's permission to appear pro hac vice on November 29, 2022, *see Williams* Minute Entry 11/29/2022, *Williams* Doc. 363, and Mr. Matheny is now the sole attorney representing Mr. Brooksby and many other defendants. His motion to withdraw from that representation is pending.

Litigants in civil and criminal actions before this Court who are represented by counsel must be represented by at least one attorney who is a member of the bar of this

4

Court. LR 83.1(c)(1). Attorneys who are not members of this Court's bar but who are members in good standing of the bar of the highest court of any state or the District of Columbia may practice in this Court for a particular case in association with a member of the bar of this Court. LR 83.1(d)(1). The Local Rules govern practice in this district and attorneys representing litigants must comply with their provisions. Lawyers practicing in North Carolina and in the Middle District of North Carolina are also subject to the North Carolina Rules of Professional Conduct. *See* LR 83.10e(b) (adopting the Code of Professional Responsibility adopted by the Supreme Court of North Carolina).

### A. Failure to Review and Take Responsibility for Court Filings

"A member of the bar of this Court who accepts employment in association with a specially appearing attorney," as Mr. Matheny did, *see Williams* Doc. 117, is responsible to the Court "for the conduct of the litigation or proceeding and must review and sign all pleadings and papers." LR 83.1(d)(2). By his own admission, Mr. Matheny did not take responsibility for the conduct of the litigation and repeatedly failed to review motions, briefs, and other materials containing his signature and filed by Mr. Shaw, despite a warning from the Court that he was responsible for the course of the litigation under Local Rule 83.1(d)(2). *See Williams* Doc. 258.

Mr. Matheny admits that he allowed Mr. Shaw to run the litigation substantively without his input or oversight in violation of his duties as local counsel. *See* Doc. 7 at ¶¶ 22–23, 35–43, 53. In Mr. Matheny's affidavit, he avers that Mr. Shaw was "the first chair attorney" in the case and he was third chair, *id.* at ¶ 22, and that he "was instructed by Mr. Shaw and the Defendants not to take any action in the case unless explicitly

5

instructed." *Id.* at ¶ 23. According to Mr. Matheny, Mr. Shaw regularly filed materials on the docket without giving Mr. Matheny an opportunity to review them and often attached Mr. Matheny's electronic signature without his consent. *See id.* at ¶¶ 35–43.[3] At no point did Mr. Matheny object to this practice, which started at least as early as October 2021. *See id.* at ¶ 35. Instead, Mr. Matheny allowed Mr. Shaw to continue affixing his signature to documents until November 2022. *See id.* at ¶ 53. When Mr. Shaw filed pleadings and papers without Mr. Matheny's prior review or authorization, Mr. Matheny did not notify the Court.

Accepting Mr. Matheny's evidence at face value, he violated his ethical and professional responsibilities to the Court. Specifically, he repeatedly violated his duties under Local Rule 83.1(d)(2) to be responsible for the conduct of the litigation and to review all pleadings and papers. This same action and inaction also violated North Carolina Rules of Professional Responsibility 1.3, 2.1, and 3.5(a)(4)(C). By failing to review filings before they were filed, Mr. Matheny did not act with reasonable diligence as required by Rule 1.3, he did not exercise independent and professional judgment as required by Rule 2.1, and he intentionally and habitually violated an established rule of procedure, that being Local Rule 83.1(d)(2), in violation of Rule 3.5(a)(4)(C).

The fact that Mr. Matheny was following the directive of some of his clients to do no substantive work and to rely on Mr. Shaw does not excuse or justify the ethical violations. Lawyers are officers of the court with substantial obligations to the public,

---

[3] Evidence submitted by Mr. Shaw for proceedings in the *Williams* case corroborates Mr. Matheny's testimony. *See generally Williams* Doc. 371-1.

6

and these obligations are just as important to public trust and confidence and to a working legal system as the rules against following a client's directives to lie, cheat, or steal. The consequences of failing to follow these rules are apparent in this case, where the Court and opposing counsel spent innumerable hours dealing with the fallout from Mr. Shaw's misconduct as enabled by Mr. Matheny. *See generally Williams* Doc. 363.

Mr. Matheny affirms that he regularly reminded Mr. Shaw of deadlines, frequently offered to assist with required legal work, and occasionally assisted in filing materials on the electronic docket. Doc. 7 at ¶¶ 25–34. As Mr. Matheny recognizes, these limited actions were insufficient to comply with the requirements of the Local Rules. Nor do they allow him to avoid responsibility for his ethical violations.

### B. Repeated Filing of Briefs Without Legal and Factual Support

Local Rule 7.2 requires briefs to include citations to factual and legal support. Many of the briefs filed by the defendants with Mr. Matheny's signature violate this rule. *See, e.g., Williams* Doc. 244 at 9 (pointing out lack of authority for the defendants' argument on prejudgment interest); *id.* at 12 (noting absence of "case law" or "reason" supporting the defendants' arguments on injunctive relief); *Williams* Doc. 292 at 3–4 (discussing the defendants' perfunctory assertion about choice of law); *id.* at 5 (noting the defendants' passing reference to jurisdiction); *id.* at 6 (noting absence of case law supporting the defendants' argument); *Williams* Doc. 298 at 4 (pointing out that "the defendants barely discuss the requirements of Rule 59(e) and have not provided case law addressing why Rule 59(e) should apply to their sufficiency-of-the-evidence challenge"); *id.* at 6 (pointing out the lack of evidence for counsels' "unsupported assertion" and other

7

legal errors); *Williams* Doc. 323 (the defendants' response to the plaintiffs' motion to appoint a receiver that contains no citation to evidence or law); *Williams* Doc. 337 (Mr. Brooksby's response to the plaintiffs' motion for contempt with numerous factual assertions not supported with citations to the record or other evidence); *Williams* Doc. 356 (discussing frivolous motion for attorney's fees).

By filing these briefs and/or by allowing others to sign his name to these briefs, Mr. Matheny repeatedly, intentionally, and habitually violated Local Rule 7.2, in violation of North Carolina Rule of Professional Conduct 3.5(a)(4)(C), which prohibits intentional and habitual violation of established rules of procedure.

At least once, Mr. Matheny allowed a frivolous motion to be filed. Specifically, Mr. Shaw filed a motion for attorney's fees, Doc. 306, that was untimely, unsupported by law and fact, and so objectively unreasonable that it led the Court to impose sanctions on Mr. Matheny, Mr. Shaw, and Mr. Brooksby. *See Williams* Doc. 400. This violated North Carolina Rule of Professional Conduct 3.1, which prohibits bringing a frivolous proceeding and asserting a frivolous issue. At this point in the litigation, Mr. Shaw's untrustworthiness to follow court procedures was well-established, *see, e.g.*, Doc. 1 at 3, 5–8 (collecting examples of Mr. Shaw's failures and the Court's reminders, requests, and Orders documenting those failures), and by failing to move to withdraw as local counsel or promptly advising the Court that Mr. Shaw had filed the motion without his consent, Mr. Matheny knowingly assisted Mr. Shaw in violating the North Carolina Rules of Professional Conduct in violation of Rule 8.4(a).

8

Mr. Matheny says that Mr. Shaw filed that motion for attorney's fees and many other motions and briefs without showing them to Mr. Matheny. *See* Doc. 7 at ¶¶ 35–43, 48–50; *Williams* Doc. 369-1 at ¶ 12. This may be so, but it does not mean Mr. Matheny did not himself violate these rules. Mr. Matheny's name and signature were on these papers and pleadings. He never advised the Court that he did not adopt them or did not approve of them. By his course of conduct, he gave Mr. Shaw unfettered permission to sign his name, and Mr. Matheny is responsible for the filing of these motions and briefs.

### C. Failure to Inform His Client About or Respond to the Plaintiffs' Post-Judgment Interrogatories

On September 16, 2022, the *Williams* plaintiffs filed post-judgment interrogatories directed to Craig Brooksby, a defendant/judgment-debtor and one of Mr. Matheny's clients. *Williams* Doc. 311. Mr. Matheny did not tell Mr. Brooksby about these interrogatories, which Mr. Brooksby was required by law to answer. Doc. 7 at ¶ 47. After the plaintiffs filed a motion to compel Mr. Brooksby to answer the interrogatories, *Williams* Doc. 327, Mr. Matheny still did not provide the interrogatories to Mr. Brooksby or arrange for the interrogatories to be provided to or answered by Mr. Brooksby. *Williams* Doc. 337 at 2. No attorney of record filed any response to the motion to compel on Mr. Brooksby's behalf. *See Williams* Doc. 335 at 2.

The plaintiffs filed a motion to hold Mr. Brooksby in contempt for other conduct, *Williams* Doc. 329, and in the supporting brief mentioned Mr. Brooksby's failure to answer the interrogatories. *Williams* Doc. 330 at 7–8. According to a brief filed by Mr.

Shaw, Mr. Shaw finally provided the interrogatories to Mr. Brooksby several days after the plaintiffs filed the motion to hold Mr. Brooksby in contempt. *Williams* Doc. 337 at 2.

On November 9, 2022, the Court ordered Mr. Brooksby to file answers to the interrogatories no later than noon on November 18, 2022. *Williams* Doc. 335 at 2–3. Mr. Shaw filed Mr. Brooksby's answers, which were incomplete, several hours late. *Williams* Doc. 347 receipt (showing that Mr. Shaw filed the answers at 11:40 p.m. on November 18, 2022); *see also Williams* Doc. 347. At a hearing on November 29, 2022, in the *Williams* case, Mr. Matheny admitted that he had allowed Mr. Shaw to take full responsibility for the case and had not had contact with Mr. Brooksby since the judgment was entered on June 2, 2022. *See generally Williams* Minute Entry 11/29/2022.

By this conduct, Mr. Matheny violated several of the North Carolina Rules of Professional Conduct. His failure to promptly inform his client of post-judgment interrogatories and his failure to take any steps to see that his client promptly answered the interrogatories violated Rule 1.3, which requires "reasonable diligence and promptness in representing a client." These failures also violated his duty of communication under Rule 1.4, which requires attorneys to keep their clients reasonably informed and "promptly comply with reasonable requests for information." Lastly, he violated Rule 3.2, his duty to "make reasonable efforts to expedite litigation," because he failed to inform his client of post-judgment interrogatories, even after the plaintiffs had filed a motion to compel.

Mr. Matheny offers in mitigation the fact that he relied on Mr. Shaw and the fact that he was on vacation at the time the interrogatories were served on September 16,

2022. *See* Doc. 7 at ¶ 45 (identifying vacation dates as September 10–17, 2022);
*Williams* Doc. 369-1 at ¶ 7. But Mr. Matheny was counsel of record for Mr. Brooksby
with independent duties to his client, and he returned from vacation before the
interrogatory answers were due. *See* Doc. 7 at ¶ 45. Additionally, any reliance on Mr.
Shaw had become unreasonable and inappropriate by the time the plaintiffs propounded
these interrogatories. Mr. Matheny knew that Mr. Shaw was generally unable to get
things done on time and in compliance with court rules, because the Court had pointed
this out in numerous orders. *See, e.g.*, *Williams* Doc. 220 at 1–2; *Williams* Text Order
06/30/2022; *Williams* Doc. 187; *Williams* Text Order 02/19/2021. Finally, even if he
reasonably relied on Mr. Shaw to send the interrogatories to Mr. Brooksby in the first
instance, once the plaintiffs filed the motion to compel it was clear to Mr. Matheny that
the interrogatories had not been answered, and he had a duty to see that Mr. Brooksby
knew of the interrogatories. Yet Mr. Matheny still failed to send the interrogatories to
Mr. Brooksby or to take any other action to see that he answered the interrogatories. Mr.
Matheny is responsible for his own conduct and inaction.

### D. Failure to Take Responsibility for the Timely Filing of Motions, Briefs, and Other Materials

North Carolina Rule of Professional Conduct 1.3 requires lawyers to "act with
reasonable diligence and promptness in representing a client." Over the course of the
*Williams* litigation, and especially post-verdict, Mr. Matheny failed to take appropriate
responsibility for the timely filing of motions, briefs, and other materials on behalf of his
clients, despite Mr. Shaw's repeated failures to competently use the electronic docketing

11

system and to file briefs on time. *See, e.g.*, *Williams* Doc. 187 at 1 (noting inability to link brief to appropriate motion); *Williams* Doc. 216 (a motion for an extension of time); *Williams* Doc. 220 at 1–2 (noting inability to file things on time); *Williams* Doc. 253 (second motion for extension of time accompanied by description of technical problems experienced while trying to file a response close to the deadline). Even after a warning from the Court not to wait until the last minute to file briefs in light of those problems, *see Williams* Text Order 06/30/2022, Mr. Matheny did not insist on taking responsibility for timely filing materials on the electronic docket. *See, e.g.*, *Williams* Doc. 343 (motion for an extension of time due to Mr. Shaw's inability to navigate the electronic docket). Instead, he continued to allow Mr. Shaw to take full responsibility for electronic filing.

Mr. Matheny affirms that he did remind Mr. Shaw from time to time of various deadlines and offer to assist in filings. *See, e.g.*, Doc. 7 at ¶¶ 26, 49. In the face of Mr. Shaw's repeated inability to competently cope with the electronic filing system, this was insufficient to meet Mr. Matheny's duties to his clients. Mr. Matheny could have moved to withdraw if Mr. Shaw had refused to allow Mr. Matheny to meet his obligations to the Court, or he could have advised the Court that specially-appearing counsel was filing briefs and motions without his permission and review. Mr. Matheny had choices other than to accede to Mr. Shaw's failure to act with reasonable diligence arising out of his technical incompetence.

### E. Handling a Matter for Which He Was Not Competent

North Carolina Rule of Professional Conduct 1.1 requires that "[a] lawyer shall not handle a legal matter that the lawyer knows or should know he or she is not

competent to handle." "Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation" or association with a lawyer who has such competence. N.C. Rules Pro. Conduct 1.1.

The evidence is overwhelming that Mr. Matheny was in over his head in this litigation. He had been out of law school for seven years, but almost all of his prior experience was with real estate matters, and he had no experience in federal court before this litigation. Doc. 7 at ¶¶ 3–8, 17. The *Williams* case was and is a complex case involving multiple plaintiffs and many defendants, overlapping antitrust and state law issues, and a jury trial, matters about which he knew nothing.

That alone did not make him incompetent to handle the representation. He did bring relevant experience with real estate foreclosures to the table. And he could have complied with Rule 1.1 if he had insured the litigation was being handled appropriately and if he had worked in association with an attorney who had the legal knowledge and skill to defend the case and who was willing to thoroughly prepare the defense.[4] But he did not do either, at least not after his co-counsel David Martin withdrew on July 7, 2022. Doc. 258.

First, Mr. Matheny did not competently fulfill his role. As previously discussed, he did not take any responsibility for the litigation, and he routinely did not review briefs

---

[4] Attorneys with limited experience can also comply with Rule 1.1 by spending the time needed to educate themselves and to prepare the case thoroughly. Mr. Matheny did not do these things and does not claim he did these things.

13

and motions before they were filed.[5] There is no evidence that he educated himself on antitrust law, class action law, civil procedure, post-judgment remedies, or any of the other myriad legal issues that arose in this case. *See supra* note 4.

Second, after the withdrawal of co-counsel Mr. Martin, Mr. Matheny was not working with a lawyer who was willing to thoroughly prepare the defense. As previously discussed, Mr. Shaw repeatedly flouted court rules, filed briefs without proofreading them, failed to provide legal or factual support for arguments, and could not manage electronic filing. His misconduct increased after the verdict. And Mr. Matheny seemingly had no idea how to deal with his co-counsel's repeated failures, responding only with occasional offers to help.

Mr. Matheny is responsible for his failure to meet his own duties. When he failed to do the work needed to ensure the litigation was being handled appropriately and when he continued to associate himself with a lawyer who had repeatedly demonstrated his inability or unwillingness to comply with well-established rules, Mr. Matheny did not provide competent representation.

### F. Section 1927

Section 1927 authorizes a court to require "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously" to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

---

[5] Mr. Matheny says this was because his clients and out-of-state co-counsel told him not to do any substantive work, but that itself is a condition of employment no competent attorney in this district would have accepted.

28 U.S.C. § 1927. Whether to award sanctions under § 1927 is within the district court's discretion, *see Six v. Generations Fed. Credit Union*, 891 F.3d 508, 518–19 (4th Cir. 2018), but courts may not award sanctions without a finding that counsel acted in bad faith. *See Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991); *see also Harvey v. Cable News Network, Inc.*, 48 F. 4th 257, 276–77 (4th Cir. 2022).

"Section 1927 was intended to sanction conduct Rule 11 does not reach; *i.e.*, protracting or multiplying the litigation to run up the opposing party's costs." *Bakker v. Grutman*, 942 F.2d 236, 242 (4th Cir. 1991). It "aims only at attorneys who multiply proceedings." *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012) (cleaned up). The merits of a lawsuit are irrelevant; § 1927 "focuses on the conduct of the litigation" and "is concerned only with limiting the abuse of court processes." *Id.* (cleaned up).

On the one hand, Mr. Matheny enabled Mr. Shaw, who undoubtedly multiplied the proceedings with his constant filing of motions for extension of time due to his inability to competently use CM-ECF. Mr. Matheny's failure to provide his client with the interrogatories or to file answers on Mr. Brooksby's behalf multiplied the proceedings because it led to a motion to compel discovery, *Williams* Doc. 327, an Order granting that motion, *Williams* Doc. 335, and several other filings. *See Williams* Docs. 337–343 (seven related filings from Mr. Shaw responding to the motion for contempt or asking for an extension of time to respond). Mr. Matheny's ongoing intentional ignorance was particularly egregious after Mr. Martin withdrew from representing the defendants, *see*

*Williams* Docs. 254, 258, as Mr. Shaw needed Mr. Matheny's name and signature to continue to appear as counsel of record.

On the other hand, the standard for a § 1927 violation is high, and courts should exercise caution. Mr. Matheny's actions and inactions appear to have been the result of inexperience and ineptitude, not based on a scheme or plan on his part. Mr. Shaw was more directly responsible for the vexatious filings. As to the broad course of conduct under review here, the Court cannot find by clear and convincing evidence that Mr. Matheny affirmatively and subjectively intended to multiply the proceedings.

Viewed objectively, the facts do show that Mr. Matheny's actions were unreasonable and that the resulting filings were vexatious. *See Bradley v. Analytical Grammar, Inc.*, No. 19-CV-249, 2022 WL 2678887, at *3 (E.D.N.C. July 11, 2022) (collecting cases from the First, Sixth, Seventh, Tenth, and Eleventh Circuit holding that bad faith under § 1927 turns not on the attorney's subjective intent, but on the attorney's objective conduct). But as he did not personally sign the filings at issue and in view of his inexperience, the sanctions otherwise imposed, and the careful approach generally appropriate in these kinds of matters, the Court will not find a § 1927 violation.

### G. Appropriate Sanction

In deciding an appropriate sanction and disciplinary action for the professional misconduct identified here, the Court considers mitigating and aggravating factors, the "potential or actual injury" resulting from the misconduct, *see In re Liotti*, 667 F.3d at 426 (citing the ABA Standards for Imposing Lawyer Sanctions § 3.0), whether Mr. Matheny's violations were "substantially justified," and the circumstances of the case that

16

may make the imposition of sanctions inappropriate. *See* LR 83.4 (Local Rule on sanctions). In addition, the Court recognizes that its inherent powers to discipline "must be exercised with the greatest restraint and caution, and then only to the extent necessary." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993); *see also In re Snyder*, 472 U.S. 634, 643–45 (1985) (discussing the inherent authority to discipline); *In re Liotti*, 667 F.3d at 426 (noting courts must consider mitigating factors in "formulating the appropriate discipline"). "The panoply of available sanctions for attorney misconduct includes disbarment, suspension, fine, public reprimand, and private reprimand." *In re Liotti*, 667 F.3d at 426.

Most of the failures described above are due to Mr. Matheny's willingness to delegate his ethical and professional responsibilities to another attorney, even after that attorney repeatedly demonstrated he was not worthy of such trust. They also flow from Mr. Matheny's willingness to take on legal representation of a client whose terms of engagement included an implicit requirement that he violate the Local Rules and his professional responsibilities. He engaged in this conduct over the course of many months. His willingness to do so shows an inability to put his ethical and professional responsibilities ahead of conflicting demands made by a client. His failure to communicate with his client gave rise to potential harm to his client, who faced contempt proceedings in part because of his failure to respond to the post-judgment interrogatories. And Mr. Matheny's conduct resulted in an excessive and unjustified drain on court resources, depriving other litigants in other cases of earlier decisions and leading to delays and frustration for the plaintiffs and opposing counsel in the *Williams* case.

17

There are some mitigating factors. Mr. Matheny is a young attorney, *see* Doc. 7 at ¶¶ 2–8, with no disciplinary history. Doc. 6-1 at ¶ 5. He has had little experience in litigation and in federal court. *See* Doc. 7 at ¶¶ 5, 17. Mr. Shaw is an older lawyer with a façade of competence who had the explicit backing of the clients. And Mr. Matheny has recently been sanctioned in the *Williams* case for conduct specifically related to the defendants' motion for attorney's fees. *See Williams* Doc. 400. While Mr. Matheny does not appear to fully appreciate the lack of justification for his reliance on Mr. Shaw, he does admit that he neglected his duties as attorney of record and that his inaction led to numerous problems and frustrating delays.

The primary purpose of disciplining an attorney is to protect the public, with a secondary purpose of deterring others from engaging in similar conduct. *See In re Liotti*, 667 F.3d at 430–31. These violations have taken place on the public docket, and given the extended timeframe and nature of Mr. Matheny's violations, a private reprimand would be wholly inadequate to accomplish either purpose. At the other end of the spectrum, disbarment or suspension of his privilege to practice law seems excessive, given his inexperience. A fine would serve little additional purpose, given the financial sanction Mr. Matheny has incurred in the sanctions proceedings in *Williams*. *Williams* Doc. 400.

But the Court must protect the proceedings before it and see that Mr. Matheny is ready before he next takes on the role of local counsel and that he develops a fuller understanding of his ethical duties and responsibilities before he again chooses to appear in this Court. Given the extent of the abdication of his responsibilities in *Williams* and

Mr. Matheny's ongoing willingness to use his reliance on Mr. Shaw as an excuse for his violations, a public reprimand and significant limitations on the privilege to practice before this Court are appropriate.

Entry of this Order imposing sanctions on the public docket serves as a protection to the public and as deterrence to any attorneys tempted to rely completely on others. The Court will see that a copy of this Order is delivered to the North Carolina State Bar so that it can be made part of Mr. Matheny's bar records and taken into account should he get into further hot water with the State Bar or another court in the future.

The Court will prohibit Mr. Matheny from appearing as local counsel for five years. The Court will further prohibit Mr. Matheny from filing any lawsuits in this district for five years and from entering an appearance on behalf of a litigant sued in this district for a period of five years. These limitations will prevent him from engaging in the specific conduct that led him here—the abdication of responsibility in a federal lawsuit to another lawyer—and will give him time to develop the maturity, experience, and, one hopes, backbone needed to deal with clients who present ethical challenges. To assist with the latter, the Court will require him to participate in ten hours of continuing legal education directed to ethics every calendar year for five years, beyond those hours required to maintain his law license, and to file a declaration under oath showing compliance no later than February 1 of each year, covering the previous calendar year, the first being due February 1, 2024.

Mr. Matheny appears as counsel of record in at least one case pending in the Middle District in addition to *Williams* and has recently also appeared as counsel for the

19

same defendant in other cases. He did not file any of them in federal court himself; all were removed. Doc. 7 at ¶ 17. Given the difficulties that withdrawal can cause clients, the Court will allow Mr. Matheny to continue to represent the one litigant in this Court and any other litigants whose cases are removed to this Court by others, even while he cannot otherwise appear in this district, on the following conditions. He shall comply with the annual ethics education and reporting requirements imposed in the previous paragraph. In addition, within three months, he must complete at least six hours of ethics education directed specifically at dealing with clients who want or demand that an attorney go farther than his professional responsibilities allow and with managing zealous representation of clients with other professional responsibilities, and he must file a detailed affidavit of compliance no later than 90 days from the entry of this Order. Finally, for each and every motion, brief, pleading, or similar document he files in this district for the next three years, he must include a declaration under oath that he has read the document, that he has provided citations to the evidence and legal authority, and that he is personally responsible for its contents. For any such document he files in the *Williams* case, he must also declare under oath that he wrote the document personally and that Mr. Shaw was not involved in its preparation.

## III. Conclusion

Mr. Matheny's conduct as an attorney of record in the *Williams* litigation repeatedly violated Local Rule 83.1(d)(2) and violated North Carolina Rules of Professional Conduct 1.1, 1.3, 1.4, 2.1, 3.1, 3.2, 3.5, and 8.4. Mr. Matheny acknowledges his failures and shortcomings and has accepted this Court's authority to impose sanctions.

After considering the matters of record in *Williams* and this disciplinary proceeding, the explanations offered by Mr. Matheny for his actions, and the arguments and representations of counsel for Mr. Matheny, the Court finds that disciplinary action is appropriate. The Court will place limitations on Mr. Matheny's ability to practice law in this district and will order him to complete additional continuing legal education.

It is **ORDERED** that:

1. John David Matheny, II, is **SANCTIONED** for violating Local Rule 83.1(d)(2) and North Carolina Rules of Professional Conduct 1.1, 1.3, 1.4, 2.1, 3.1, 3.2, 3.5, and 8.4.

2. Mr. Matheny **SHALL NOT** appear in this district as counsel of record under Local Rule 83.1(d), **SHALL NOT** initiate any lawsuits in this district, and **SHALL NOT** enter an appearance on behalf of a litigant sued in this district. These prohibitions **SHALL** terminate five years from today if Mr. Matheny participates in ten hours of continuing legal education, beyond those hours required to maintain his law license, every calendar year for five years and files a declaration under oath showing compliance no later than February 1 of each year, covering the previous calendar year, the first being due February 1, 2024. If he does not comply with these requirements, his membership in the bar of the Middle District of North Carolina **SHALL** be terminated and revoked.

3. If Mr. Matheny wishes to continue to represent the clients he currently represents in cases pending in this district and to represent any other litigants

whose cases might be removed to this district by others during the next five years, he **SHALL**:

    a. Complete at least six hours of ethics education directed specifically at dealing with clients who want or demand that an attorney go farther than his professional responsibilities allow and managing zealous representation of clients with other professional responsibilities;

    b. File a detailed affidavit of compliance no later than 90 days from the entry of this Order, providing details of the education program(s); and

    c. For each and every motion, brief, pleading, or similar document Mr. Matheny files in this district for the next three years, include a declaration under oath that he has read the document, that he has provided citations to the evidence and legal authority, and that he is personally responsible for its contents.

4. For each and every motion, brief, pleading, or similar document Mr. Matheny files in the *Williams* case, No. 19-CV-1076, he **SHALL** include a declaration under oath that he wrote the document personally and that Steven W. Shaw was not involved in its preparation.

5. Failure to comply with all requirements in this Order, including all reporting requirements, **SHALL** result in termination of Mr. Matheny's privilege to practice law in this district and revocation of his membership of the bar of the Middle District of North Carolina.

6. Mr. Matheny **SHALL** report this discipline in any applications to practice law before any federal or state courts.

7. The Clerk **SHALL** send a copy of this Order to the North Carolina State Bar.

This the 24th day of March, 2023.

UNITED STATES DISTRICT JUDGE